**RESOLUTION TRUST CORPORATION,**
**Plaintiff,**

v.

**Francis X. GALLAGHER, Vincent J. Gavin, John J. Gill, John W. Gilluly, Gordon A. Groebe, Joseph M. Heidecker, Lawrence Klinger, Louis J. Kole, Gary K. Kummer, Matthew J. Lamb, H. Richard Landis, Edward A. Long and Milton Meyers, Defendants.**

No. 92 C 1091.

United States District Court,
N.D. Illinois, E.D.

July 10, 1992.

---

Alan Francis Curley, Fay Clayton, Steven A. Ramirez, Robinson, Curley & Clayton, P.C., Stephen Novack, Timothy John Miller, Novack & Macey, Chicago, Ill., for plaintiff.

Sean Malone Sullivan, Ross & Hardies, P.C., Chicago, Ill., for defendant Francis X. Gallagher.

Gordon B. Nash, Jr., Gardner, Carton & Douglas, Chicago, Ill., for defendant Vincent J. Gavin.

Edmund Patrick Burke, Thomas M. Lake, Burke & Burke, Ltd., Chicago, Ill., for defendant John J. Gill.

George W. Groble, Donald G. Groble, Groble & Groble, Ltd., Chicago, Ill., for defendant John W. Gilluly.

Michael D. Walsh, Gierach, Schussler & Walsh, Ltd., Oak Lawn, Ill., for defendant Gordon A. Groebe.

Locke E. Bowman, III, Royal B. Martin, Jr., Daniel Thomas Hartnett, Martin, Brown, Sullivan & Bowman, Chicago, Ill., for defendant Joseph M. Heidecker.

Susan Bogart, Chicago, Ill., for defendant Lawrence Klinger.

John Joseph Reidy, Edward P. Freud, Dean J. McElroy, Ruff, Weidenaar & Reidy, Ltd., Chicago, Ill., for defendant Louis J. Kole.

Donald L. Mrozek, John Joseph Foran, Peter D. Sullivan, Hinshaw & Culbertson, Chicago, Ill., Daniel M. Purdom, Hinshaw & Culbertson, Lisle, Ill., for defendant Gary K. Kummer.

Michael J. O'Rourke, Robert Walter Tarun, Bruce Roger Braun, Winston & Strawn, Jack J. Crowe, Sidley & Austin, Chicago, Ill., for defendants Matthew J. Lamb, H. Richard Landis.

George Patrick Lynch, George P. Lynch, Ltd., Chicago, Ill., for defendant Edward A. Long.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the court on defendants' motions to dismiss pursuant to Rule 12(b)(6) Fed.R.Civ.P., or in the alternative for a more definite statement pursuant to Rule 12(e). For the reasons set forth below, the motions are granted in part, and denied in part.

## BACKGROUND

Plaintiff Resolution Trust Corporation ("the Corporation") filed this action against the former officers and directors of Concordia Federal Bank for Savings ("Concordia") and its wholly owned subsidiary, Concor Financial Services, Inc. ("Concor"). On February 17, 1989, Concordia was placed into conservatorship. On May 29, 1990, Concordia was placed into receivership, and the Corporation was appointed as its Receiver. The complaint seeks to recover losses for the defendants' alleged negligence (Counts I and V), breach of fiduciary duty (Counts II and VI), gross negligence (Counts III and VII), and breach of contract (Counts IV and VIII). The Corporation essentially alleges that the defendants' conduct caused Concordia to incur substantial losses which ultimately resulted in the failure of the bank and its subsidiary.

Each of the defendants [1] has filed a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), or in the alternative for a more definite statement pursuant to Rule 12(e). All of the defendants were granted leave to join and adopt the arguments made in the briefs filed by their co-defendants, and therefore we will rule based on the consolidated group of motions.[2]

## LEGAL STANDARD

Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint's allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The allegations of a complaint should be construed liberally and a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Doe on Behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411 (7th Cir. 1986); *Ellsworth v. City of Racine*, 774 F.2d 182 (7th Cir.1985); *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ In addition, it is well-settled that federal court pleadings need only comply with the standards of "notice pleading." *Williams v. Adams*, 625 F.Supp. 256, 262 (N.D.Ill.1985). Notice pleading merely requires that in order to state a claim for relief, the plaintiff must give notice to the defendant of the theory behind the claims alleged and the basic facts which support those allegations. *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980). "As long as the defendant is on sufficient notice of the nature of the claim, the plaintiff has satisfied federal pleading requirements." *Ganton Technologies, Inc. v. Quadion Corp.*, 755 F.Supp. 203, 207 (N.D.Ill.1990). We address defendants' motions keeping these principles in mind.

## DISCUSSION

Defendants argue that the Corporation's complaint must be dismissed based on five primary arguments: 1) that the Corporation's alleged claims are barred by the applicable statute of limitations, 2) that the Corporation improperly seeks to recover for conduct protected by the business judgment rule, 3) that pursuant to 12 U.S.C.

---

**1.** No motion to dismiss has yet been filed on behalf of defendant Milton Myers, whose estate was recently substituted as a named defendant in the case.

**2.** The Corporation has voluntarily nonsuited Counts V, VI, VII, and VIII against defendant John Gill.

§ 1821(k), the Corporation may only assert a claim against defendants based on gross negligence, 4) that the Corporation has failed to adequately allege a cause of action for breach of contract, and 5) that the Corporation seeks recovery for alleged economic losses, which is prohibited by Illinois common law. Each of these arguments will be addressed below.

## I. *Whether the Claims are Barred by the Applicable Statutes of Limitations*

The Corporation brought its complaint pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1811 *et seq.* Section 1821(d)(14) of FIRREA contains the statute of limitations provision for all claims brought by the Corporation, and provides in pertinent part:

(14) STATUTE OF LIMITATIONS FOR ACTIONS BROUGHT BY CONSERVATOR OR RECEIVER—

(A) IN GENERAL—Notwithstanding any provision of any contract, the applicable statute of limitations with respect to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under state law; and

(ii) in the case of any tort clam, the longer of—

(I) the 3–year period beginning on the date the claim accrues, or

(II) the period applicable under state law.

(B) DETERMINATION OF THE DATE ON WHICH A CLAIM ACCRUES—For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(I) the date of the appointment of the Corporation as conservator or receiver; or

(II) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14). Therefore, pursuant to § 1821(d)(14), the Corporation's contract claims are governed by a six-year statute of limitations, and the tort claims are governed by a three-year statute of limitations unless the applicable state law limitations period is longer. Under Illinois law, the applicable limitations period for tort and contract claims is five years. Ill. Rev.Stat. ch. 110, ¶ 13–205. Therefore, the Corporation's tort and contract claims are governed respectively by five- and six-year limitations periods.

Section 1821 provides that the limitations period begins to run on the later of the date the Corporation was appointed as the conservator or receiver, or the date the claim accrued. Defendants argue that since the Corporation was appointed as conservator of Concordia on February 17, 1989, all tort claims accruing before February 17, 1984 and all contract claims accruing before February 17, 1983 are barred by the statute of limitations.

However, defendants' calculation of the limitations period under Section 1821 is simply inaccurate. § 1821 makes clear that the limitations period *begins* to run on the date that the claim accrues, and that the claim accrues on the *later* of the date that the Corporation was appointed as conservator, or when the cause of action accrued. Therefore, the Corporation had five- and six-year limitations periods within which to file their claims which began to run on February 17, 1989. Since the Corporation filed its complaint on February 12, 1992, the claims are not time-barred. However, § 1821(d)(14) does not revive claims that were previously time-barred under the applicable state statutes of limitations. *See e.g.*, *RTC v. Krantz*, 757 F.Supp. 915, 921 (N.D.Ill.1991). Therefore, defendants argue that any claims which accrued prior to February 17, 1983 are barred because the Illinois statute of limitations had already run when the Corporation was appointed as conservator. Defendants assert that since the complaint commingles both time-barred claims with those that are potentially viable, the complaint must be dismissed pursuant to Rule 12(b)(6). *See*

*Fowler v. Mutual Life Insurance Co.,* 1992 WL 14146 (N.D.Ill.1992); *Tellis v. United States Fidelity & Guaranty Co.,* 805 F.2d 741 (7th Cir.1986).

In its response, the Corporation argues that these limitations periods were tolled under the adverse domination doctrine. The adverse domination doctrine tolls the running of the statute of limitations period where the entity is controlled by or dominated by wrongdoers. The statute of limitations begins to run again when the wrongdoers lose control of the entity. This rationale behind the adverse domination doctrine is premised upon the principle that officers and directors who have harmed the entity cannot be expected to take legal action against themselves. *FDIC v. Bird,* 516 F.Supp. 647, 651 (D.P.R. 1981). The adverse domination doctrine has been applied in many cases. *See e.g. RTC v. Interstate Federal Corp.,* 762 F.Supp. 905, 909 (D.Kan.1991); *FDIC v. Greenwood,* 739 F.Supp. 450, 453 (C.D.Ill. 1989).

The Corporation argues that it has made sufficient allegations in the complaint to invoke the adverse domination doctrine, and we agree. In Paragraph 19 of the Complaint, the Corporation alleges that the defendants completely dominated and controlled Concordia. The Corporation alleges in Paragraph 22 of the Complaint that the defendants constituted an overwhelming majority of the Board of Directors from 1982 until Concordia was placed into receivership. Because on a motion to dismiss, all allegations are construed as true, we find that the Corporation has adequately alleged a basis for the application of the adverse domination doctrine.

We therefore find that claims based on actions which occurred after February 17, 1984 are viable under § 1821 because they did not accrue until the Corporation was appointed as conservator. In addition, we find that claims based on conduct occurring before February 17, 1984 remain potentially viable pursuant to the adverse domination doctrine, although they would otherwise be time-barred under the Illinois statute of limitations. Therefore, defendants' motion to dismiss based on the grounds that the claims are time-barred is denied.

## II. *Whether the Corporation Can Only State Claims Based On Gross Negligence Pursuant to § 1821*

Defendants' second argument for dismissal is that Section 1821 establishes gross negligence as the exclusive standard of liability, and therefore, all counts alleging less culpable conduct must be dismissed for failure to state a claim upon which relief may be granted. The Corporation responds by arguing that § 1821 does not preempt actions based on either state law or federal common law allowing claims to be brought for less egregious conduct.

Section 1821(k) provides in pertinent part:

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

. . . .

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law. 12 U.S.C. § 1821(k).

We will first address whether § 1821(k) preempts claims under state law, and then will focus on whether the enactment of § 1821(k) preempts previously existing federal common law.

Courts have split over the issue of whether § 1821 precludes the bringing of actions against directors under state law. In *Gaff v. FDIC,* 919 F.2d 384 (6th Cir. 1990), the Sixth Circuit stated that the legislative history of § 1821(k) "explicitly

states an intent to nationalize the law of directors' and officers' liability when banks are taken over by the FDIC." 919 F.2d at 391. In *FDIC v. Swager,* 773 F.Supp. 1244 (D.Minn.1991), the court also concluded that § 1821(k) established a federal standard of directors' liability which precludes suits against directors based on conduct other than gross negligence under state law.

On the other hand, in *FDIC v. Canfield,* 957 F.2d 786 (10th Cir.1992), the court held that the Corporation can pursue an action against directors of a failed institution based on state law allowing claims for simple negligence and breach of fiduciary duty. Several other cases have similarly held that § 1821(k) does not preempt claims against directors of failed institutions based on state law allowing causes of action based on less culpable conduct. *See e.g. FDIC v. Howse,* 802 F.Supp. 1554 (S.D.Tex.1992); *FDIC v. Nihiser,* 799 F.Supp. 904 (C.D.Ill.1992); *FDIC v. Miller,* 781 F.Supp. 1271 (N.D.Ill.1991).

▋ The starting point in construing a statute is to look at the language of the statute itself. Absent a clearly expressed legislative intent to the contrary, the language of the statute must be regarded as conclusive. *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990).

▋ In this court's opinion, § 1821(k) establishes gross negligence as the minimum standard of directors' liability, yet does not preclude any action for less culpable conduct based on state law. First, the statute states that a director "may be held personally liable ... for gross negligence." "May" is a permissive term, which should not be read as being synonymous with "may only." *See RTC v. Lightfoot,* 938 F.2d 65, 66–67 (7th Cir.1991); *Rose v. Rose,* 481 U.S. 619, 627–28, 107 S.Ct. 2029, 2034–35, 95 L.Ed.2d 599 (1987). While a director may be held liable for gross negligence under § 1821(k) even where a state only allows a claim based on intentional misconduct, nothing in the statute's language can be interpreted to support the defendants'

argument that the statute only allows actions based on gross negligence. This conclusion is supported by the last sentence of § 1821(k), which states: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." The Corporation's right to sue under state law based upon breach of fiduciary duty or simple negligence is clearly preserved by this provision. *See Canfield, supra,* 957 F.2d at 788. We therefore find that § 1821(k) establishes a federal cause of action against directors of failed institutions based on a minimum culpability of gross negligence, yet does not preempt any state law actions based on negligence or other less culpable conduct.

▋ We also must address the effect that the enactment of FIRREA has on previously existing federal common law. As the Supreme Court stated in *City of Milwaukee v. Illinois and Michigan,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), "the appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law preempts state law." 451 U.S. at 316, 101 S.Ct. at 1792. In analyzing whether a Congressional statute preempts state law, the relevant inquiry involves whether Congress intended to supersede the states' police powers. *See e.g. Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). As we stated above, the "savings" provision at the end of § 1821(k) indicates that Congress did not intend to preempt state law regarding director and officer liability. However, when determining the effect that Congress's enactment of a statute has on previously existing federal common law, "we start with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee, supra,* 451 U.S. at 316, 101 S.Ct. at 1792.

Federal common law has been developed in the few instances where courts have found it necessary to develop a federal rule in absence of an applicable act of Congress,

due to a conflict between national policy and the application of state law. *Id.* at 313, 101 S.Ct. at 1790. Yet, "federal common law is a necessary expedient, and when Congress addresses a question previously governed by a decision rested on federal common law, the need for such an unusual exercise of lawmaking by federal courts disappears." *Id.* at 1791, 101 S.Ct. at 1791 (citations omitted).

■ The enactment of § 1821(k) by Congress has eviscerated the need for courts to construct law regarding a federal standard of liability for directors and officers of failed institutions. Congress has now chosen the standard of gross negligence as the federal standard of liability, and any previously existing federal law in this area is preempted as a result.

The Corporation argues that the federal common law standard of negligence still remains viable because of the "savings" clause of § 1821(k). We disagree. As Judge Holderman stated in *FDIC v. Miller*, 781 F.Supp. 1271 (N.D.Ill.1991):

> By passing Section 1821(k), however, Congress "spoke directly" to the issue which those cases dealt. Congress has now expressly defined the magnitude of negligence which would give rise to a federal cause of action against officers and directors of federally insured financial institution.... If Section 1821(k) were construed in the way urged by the FDIC, with federal common law negligence causes of action preserved, the main body of the provision requiring "gross negligence" would have no effect. Consequently, the federal gross negligence standard Section 1821(k) establishes would be purposeless, since a federal negligence standard would already exist and be preserved by the savings clause.

781 F.Supp. at 1276. We find that the passage of § 1821(k) preempted all previously existing federal common law, and created a federal cause of action solely for gross negligence.

■ Next, we must review the substance of the allegations in the complaint to determine whether they present causes of action under state law, which is not preempted by § 1821(k), or federal law, which is now set forth exclusively in § 1821(k). Concordia and Concor, its subsidiary, were federally chartered, federally regulated, federally insured thrifts which were organized under federal law. Moreover, Concordia was declared insolvent and placed into conservatorship and ultimately receivership pursuant to federal law. In addition, Concordia was placed into receivership with a federal agency. In essence, Concordia was a creature of federal law "from its cradle to its corporate grave." *Rettig v. Arlington Heights Federal Savings & Loan Association*, 405 F.Supp. 819, 823 (N.D.Ill.1975). As a result, there is no basis for any state law claims in this case. Therefore, all claims will be construed as arising under federal law.

We now must address the sufficiency of the federal law claims. As we stated above, the enactment of FIRREA by Congress displaced previously existing federal common law, and established gross negligence as the federal standard of officer and director liability. Therefore, Counts I and IV (negligence) and Counts II and VI (breach of fiduciary duty) must be dismissed for failure to state a claim upon which relief may be granted, since the conduct they allege falls below the minimum level of culpability established by Congress in § 1821(k).

III. *Whether Actions Taken By Defendants Are Protected By the Business Judgment Rule*

■ Defendants next argue that their conduct and decisions while serving on Concordia's Board of Directors are protected by Illinois' business judgment rule, which provides that directors and officers who have been diligent and careful in executing their duties will not be held personally liable for errors in judgment. *See Stamp v. Touche Ross & Co.*, 1992 WL 46900, 1992 Ill.App. LEXIS 363 (Ill.App. 1st Dist.1992). However, as we previously determined, the Corporation's claims all sound in federal law rather than in state law. Therefore, Illinois' business judgment

rule has no application. Moreover, as discussed above, the previously existing federal common law, which required officers and directors to exercise the degree of care which ordinarily prudent and diligent persons would exercise,[3] has been replaced by § 1821(k), which sets a federal liability standard of gross negligence. Moreover, since the claims for negligence and breach of fiduciary duty have been dismissed, any argument relating to the applicability of the business judgment rule is moot.

## IV. Whether the Corporation Has Adequately Stated a Claim for Breach of Contract

▬ Defendants argue that the Corporation has failed to adequately allege a breach of contract claim in Counts IV and VIII because these counts essentially allege breach of fiduciary duty, which is properly plead as a tort claim rather than a contract claim. In *FDIC v. Greenwood*, 739 F.Supp. 450, 452–53 (C.D.Ill.1989), the court specifically held that allegations of breach of fiduciary duty by the directors of a bank could not stand as the basis for a breach of contract action. 739 F.Supp. at 452–53. *See also FDIC v. Dannen*, 747 F.Supp. 1357, 1362 (W.D.Mo.1990); *Sarraga v. Girod Vela & Co., Inc.*, 649 F.Supp. 11 (D.P.R.1986). Counts IV and VIII clearly state contract claims based on breaches of fiduciary duty. There are no allegations regarding any written contract. Moreover, in discussing the terms of the purported contract between the parties, the complaint merely alleges that "there were express or implied contracts between Concordia and the defendants requiring defendants to faithfully, properly, and with due care discharge their duties as directors, officers, and/or employees in return for the salaries and/or directors' fees which they were paid." (Complaint ¶ 84). This is simply a statement of the defendants' fiduciary duties to the institution, rather than a claim for breach of contract.

In its response, the Corporation concedes that Counts IV and VIII essentially allege breach of fiduciary duty, yet asks us to follow the holding in *Hughes v. Reed*, 46 F.2d 435 (10th Cir.1931), which stated that breaches of fiduciary duty can form the basis for a breach of contract claim. 46 F.2d at 440–41. However, we choose to follow the approach taken in this Circuit and hold that claims for breach of fiduciary duty must be pleaded as tort claims rather than contract claims.

As discussed above, the tort claims for breach of fiduciary duty in counts II and VI were dismissed because there is no basis for state law claims in this case, and federal law requires a minimum culpability of gross negligence. Therefore, any arguments which the Corporation makes regarding any alleged breach of fiduciary duty must necessarily fall under the claims alleging gross negligence. Because we find that the allegations in Counts IV and VIII state tort claims rather than claims for breach of contract, Counts IV and VIII are dismissed for failure to state a claim upon which relief may be granted.

## V. Whether the Corporation Can Recover Economic Damages

▬ Finally, defendants argue that the Corporation cannot recover economic damages on its tort claims. In support of their argument, defendants rely on the Illinois common law as set forth in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Since we have determined above that there is no basis for any state claims in this case, and because the remaining tort claims are governed by the federal statute, Illinois law is not relevant. Rather, the rules governing the damages to which the Corporation is entitled are set forth in 12 U.S.C. § 1821(*l*), which states: "In any proceedings related to any claim against an insured depository institution's director, officer, ... recoverable damages determined to result from the improvident or otherwise improper use or investment of any insured depository institutions' assets shall include principal losses and appropriate interest." 12 U.S.C. § 1821(*l*). We therefore reject defendants' argument that Illinois law can

3. *See e.g. FSLIC v. Kidwell*, 716 F.Supp. 1315, 1317–18 (N.D.Cal.1989).

**604**

be applied to restrict the amount of damages which the Corporation can recover on its federal law claims under the statute.

## CONCLUSION

For the reasons set forth above, Counts I, II, IV, V, VI, and VIII are dismissed. The gross negligence claims stated in Counts III and VII remain.