829 F.Supp. 1095 (1993)
RESOLUTION TRUST CORPORATION, as receiver of Missouri Savings Association, F.A., Plaintiff,
v.
Solon GERSHMAN, et al., Defendants.
No. 4:92CV1687.
United States District Court, E.D. Missouri, E.D.
July 12, 1993.
*1096 *1097 Dorothy L. White-Coleman, Susie M. McFarlind, Peoples and Hale, St. Louis, MO, Charles A. Getto, Lawrence D. Greenbaum, Douglas M. Greenwald, McAnany and Van Cleave, Kansas City, KS, Carolyn A. Arthur, Professional Liability Section, Overland Park, KS, for plaintiff.
Alan E. Popkin, Husch and Eppenberger, St. Louis, MO, for Solon R. Gershman, Edward Balk and Thomas A. Stern.
Reinhold W. Borgmann, Jr., pro se.
Richard E. Greenberg, Merle L. Silverstein, Rosenblum and Goldenhersh, St. Louis, MO, for Arline Brilliant.
Alan C. Kohn, Lisa A. Pake, Kohn and Shands, St. Louis, MO, for Gerald J. Heitman.
David Wells, Thompson and Mitchell, St. Louis, MO, for Sherman J. LeMaster.
Norman W. Pressman, Jonathan E. Scharff, Greensfelder and Hemker, St. Louis, MO, for Marvin Polinsky.
*1098 Gerald P. Greiman, Managing Partner, Martin M. Green, Partner, Green and Hoffmann, St. Louis, MO, for Mahlon Rubin.
Gideon H. Schiller, pro se.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court pursuant to Motions to Dismiss filed by Defendants Gershman, Balk and Stern; Heitman; Rubin; LeMaster and Brilliant; Schiller; and Borgmann and Motions for More Definite Statement filed by Defendants LeMaster and Brilliant; and Defendant Schiller.

I. BACKGROUND
Plaintiff the Resolution Trust Company (RTC) brings this action as receiver of Missouri Savings Association, F.A. Defendants are former officers and directors of Missouri Savings Association.[1] (Missouri Savings) Prior to June 28, 1989, Missouri Savings was a state chartered mutual savings and loan association. On or about June 28, 1989, the Federal Home Loan Bank Board (FHLBB) determined that Missouri Savings was insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver. On the same day, the FSLIC established a new entity, Missouri Savings, F.A., which entered into a purchase and assumption transaction with FSLIC by which Missouri Savings, F.A. acquired substantially all of the assets and liabilities of Missouri Savings, including the instant causes of action. Plaintiff became the conservator and then the receiver of Missouri Savings, F.A.
In the instant action, Plaintiff alleges that Defendants originated and approved large, poorly underwritten commercial real estate loans resulting in losses to Missouri Savings of more than $39 million. Plaintiff makes the following specific factual allegations: (1) Defendants failed to inform themselves of Missouri Savings' loan portfolio; (2) Defendants failed to establish adequate policies governing the conditions under which loans could be made; (3) Defendants failed to establish adequate internal controls and audit procedures; (4) Defendants failed to establish or adhere to policies responsive to the warnings and criticisms of Missouri Savings by savings and loan regulatory authorities; (5) Defendants caused or permitted Missouri Savings to be in violation of relevant statutes, rules, regulations and/or directives; (6) Defendants made loans to persons already delinquent in other obligations to Missouri Savings; (7) Defendants approved and disbursed loans without adequate underlying information in violation of Missouri Savings' own policies and despite repeated admonitions from federal savings and loan regulatory authorities; (8) Defendants approved and disbursed loans on an unsecured or inadequately secured basis; (9) Defendants disbursed loans in excess of the prudent lending limits established for the approving officer; (10) Defendants disbursed loans to borrowers who were inexperienced in the businesses to be funded without investigating the probable success of such businesses; (11) Defendants disbursed loans used to finance business or real estate purchases where the loan proceeds were 100% or more of the value of the property or purchase price; (12) Defendants failed to establish and enforce realistic repayment programs; (13) Defendants failed to establish or supervise effective collection policies and procedures; and (14) Defendants failed to supervise properly Missouri Savings' wholly-owned subsidiaries. On the basis of these allegations, Plaintiff seeks damages for breach of fiduciary duty, negligence and gross negligence. In addition, Plaintiff seeks an accounting of Defendants' financial circumstances for the past five years.

II. MOTIONS TO DISMISS
Defendants have filed six separate motions to dismiss. The motion of Defendants Gershman, Stern and Balk was filed on September 16, 1992. The remaining Defendants all incorporate the Memorandum of Law filed in support of Defendants Gershman, Stern and Balk's Motion to Dismiss. Because all pending motions to dismiss raise similar issues, *1099 the Court will address the motions collectively.
A cause of action should not be dismissed for failure to state a claim unless, from the face of the complaint, it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir.1978), cert. denied, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979). In ruling on a motion to dismiss the Court views the allegations in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

A. Preemption
Defendants maintain that § 212(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.-1. No. 101-73, 103 Stat. 183 (1989), 12 U.S.C. § 1821(k), establishes a uniform national standard of director and officer liability which preempts all state law causes of action. Section 212(k) provides:

A director or officer of an insured depository institution may be held personally liable for money damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation 
(1) acting as conservator or receiver of such institution, ...

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k) (emphasis added).[2]
Defendants maintain that this statute establishes a national standard of director and officer liability and thereby preempts Plaintiff's negligence and breach of fiduciary duty claims. Plaintiff counters that the statute only preempts state law to the extent that state law exempts directors and officers from liability for gross negligence and other more culpable conduct. Under Plaintiff's construction, the final phrase of the statute ensures that the RTC retains all rights under any other applicable law, including state law that establishes director and officer liability for mere negligence or breach of fiduciary duty.
The Court of Appeals for the Eighth Circuit has not yet had occasion to construe § 1821(k). However, the only two courts of appeals that have squarely addressed this issue have held that § 1821(k) does not preempt all state law causes of action.[3]See Federal Deposit Insurance Corp. v. McSweeney, 976 F.2d 532 (9th Cir.1992) cert. denied ___ U.S. ___, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); Federal Deposit Insurance Corp. v. Canfield, 967 F.2d 443 (10th Cir.) cert. dismissed ___ U.S. ___, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992). After consideration of the arguments of counsel, the relevant caselaw and the legislative history of § 1821(k), the Court holds that § 1821(k) does not preempt Plaintiff's claims for breach of fiduciary duty and negligence.
The Court's construction of § 1821(k) must begin with the plain language of the statute itself. Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). The plain language of the statute is *1100 conclusive absent a clearly expressed legislative intention to the contrary. Id. Furthermore, federal law will not be construed to preempt state law unless preemption was the clear intent of Congress. Wisconsin Public Intervenor v. Mortier, ___ U.S. ___, ___, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991); Norfolk Redevelopment & Housing Authority v. Chesapeake & Potomac Telephone Company, 464 U.S. 30, 35, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983).
The first sentence of § 1821(k) provides that directors and officers may be sued for gross negligence. As the Court notes in McSweeney, "may" is not the equivalent of "may only." McSweeney, 976 F.2d at 537 (citing Rose v. Rose, 481 U.S. 619, 626-27, 107 S.Ct. 2029, 2034, 95 L.Ed.2d 599 (1987), for the proposition that the use of the word "may" does not imply exclusivity or preemption of state law). See also Canfield, 967 F.2d at 446 (same). The Court concurs with the RTC's contention that nothing in the first sentence of § 1821(k) limits the liability of directors and officers of failed financial institutions.
Of course, the statute must be construed in its entirety. The second and final sentence of § 1821(k) states that the section is not intended to "impair or affect any right of the Corporation under other applicable law." Because Congress did not restrict the term "other applicable law," the Court finds that the term encompasses both state and federal law. See McSweeney, 976 F.2d at 538; Canfield, 967 F.2d at 446-47. Defendants maintain that the phrase "other applicable law" must be juxtaposed with the reference to state law in the immediately preceding sentence. Defendants conclude that, given this juxtaposition, the term "other applicable law" refers to other applicable federal law only. However, had Congress intended to limit the savings clause to other applicable federal law only, it could have so specified. See Canfield, 967 F.2d at 447 (citing instances where § 1821 specifies a particular body of law). The Court finds that the term "other applicable law," as it appears in § 1821(k), more plausibly refers to the entire universe of applicable law and therefore the RTC retains its right to sue under all existing state law theories.
Moreover, the Court finds that this construction is consistent with the legislative history of the statute. Defendants rely heavily on the following passage from the Conference Report on FIRREA:
Title II preempts State law with respect to claims brought by the FDIC in any capcity [sic] against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.
H.R.Conf.Rep. No. 222, 101st Cong. 1st Sess. 398 (1989), reprinted in, 1989 U.S.Code Cong. & Admin. News 86, 432, 437. Defendants maintain that this passage clearly establishes that FIRREA preempts the field with respect to the liability of the officers and directors of failed financial institutions. Certainly, the above-quoted paragraph could be construed to mean that FIRREA was intended to preempt state law in all respects. However, nothing in the passage is inconsistent with the notion of partial preemption. The second sentence of the relevant passage specifies that the "preemption allows the [RTC] to pursue claims for gross negligence." This language is entirely consistent with the Court's determination that § 1821(k) preempts state law only to the extent that state law exempts directors and officers from liability for gross negligence or other more culpable conduct.
The Court finds that the most straightforward reading of the statute mandates a finding that § 1821(k) was only intended to preempt state law that exonerates directors and officers for liability for gross negligence. Thus, the Court must consider whether Plaintiff has stated claims for which relief can be granted.

B. Gross Negligence
In Count II of its Complaint, Plaintiff purports to state a cause of action against all ten named Defendants for "negligence and/or gross negligence." In support of this claim, Plaintiff sets forth the allegations summarized *1101 in Section I of this Memorandum and Order. Defendants contend that Plaintiff has failed to state a cause of action for gross negligence insofar as Plaintiff has failed to allege that Defendants' actions were taken with conscious disregard of a duty or with actual knowledge of a strong probability of harm.
Section 1821(k) provides that directors may be sued for gross negligence. However, the statute defers to state law for its definition of the term:
A director or officer ... may be held personally liable ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law.
12 U.S.C. § 1821(k). By incorporating state law definitions and determinations of gross negligence, the statute essentially defers to governing state law.
Missouri courts, however, "do not recognize degrees of negligence and therefore do not distinguish between negligence and gross negligence." Duncan v. Missouri Board for Architects, Professional Engineers & Land Surveyors, 744 S.W.2d 524, 532 (Mo. App.1988). See also Fowler v. Park Corp., 673 S.W.2d 749, 755 (Mo. banc 1984); Warner v. Southwestern Bell Telephone Co., 428 S.W.2d 596, 603 (Mo.1968). Defendants urge the Court to assess Plaintiff's complaint accordingly to the willful and wanton standard set forth in Warner. In Warner, the court held that defendant telephone company's limitation of liability clause did not apply to conduct that was willful and wanton. Warner, 428 S.W.2d at 603. In essence, Defendants maintain that the willful and wanton standard defines a level of conduct somewhere between mere negligence and intentionally tortious behavior. The Court does not disagree with this proposition in and of itself. However, in Warner, the court was addressing the circumstances under which the courts will decline to enforce a limitation of liability clause. The court was not defining or construing a cause of action.[4]
Defendants also refer the court to Duncan v. Missouri Board of Architects, supra, wherein the court construes the term "gross negligence" as it appears in a professional licensure statute. Appellants in Duncan challenged the trial court's affirmance of the Missouri Board of Architects' (the Board) decision to revoke appellants' engineering certificates. The Board made its decision on the basis of findings of fact and conclusions of law prepared by the Commission. On appeal, the parties debated the Commission's definition of the statutory term "gross negligence." The Missouri Court of Appeals upheld the Commission's ruling that the term denoted conduct taken with a conscious disregard of a duty. Defendants urge the Court to adopt this definition in the instant case.
However, the Duncan court's construction of the term "gross negligence" as it is used in a licensure statute does not create a common law cause of action for gross negligence in Missouri. The Court finds that the Duncan court's definition of gross negligence was developed in a distinctly different legal context and, therefore, is not applicable to the instant action.
As previously noted, FIRREA defers to state law definitions of gross negligence. After careful consideration of the statutory language, the Court holds that where the governing state law does not create a cause of action for gross negligence or set forth an applicable definition, the RTC may not assert a gross negligence claim. This holding is consistent with the Court's ruling that § 1821(k) only preempts state law to the extent that state law exempts directors and officers from liability for gross negligence or more culpable behavior. The RTC's claims must be based on other applicable law. In accordance with this ruling, Plaintiff's claims for gross negligence will be dismissed.

*1102 C. Breach of Fiduciary Duty

In Count I of its Complaint, Plaintiff alleges that all Defendants breached their fiduciary duties in making, supervising and collecting loans and other transactions. Complaint, ¶ 21. In support of this contention, Plaintiff sets forth exactly the same factual allegations that support its negligence claim. Defendants maintain that even if FIRREA does not preempt Plaintiff's state law breach fiduciary duty claim, that claim should be dismissed because Plaintiff has failed to allege facts that would support a finding that Defendants breached their duty of loyalty to Missouri Savings.
Defendants do not deny that they have a fiduciary relationship with Missouri Savings. The Missouri courts have not classified all of the fiduciary duties of corporate officers and directors. Forinash v. Daugherty, 697 S.W.2d 294, 302 (Mo.App.1985). It is true that the majority of cases addressing breach of fiduciary duty claims involve a breach of the duty of loyalty. However, in Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1109-10 (W.D.Mo.1993) the United States District Court for the Western District of Missouri stated that Missouri law does not limit the concept of fiduciary duty to self-dealing. Therefore, the Court holds that Plaintiff's breach of fiduciary duty claim, though redundant, does not fail to state a cause of action for which relief can be granted.
Defendants LeMaster and Brilliant maintain that Plaintiff's breach of fiduciary duty claim must be dismissed because Plaintiff fails to allege that Defendants acted with intentional or reckless disregard of the rights of Missouri Savings. Even assuming that intentional or reckless disregard is an element of a breach of fiduciary duty claim, the Court finds that Plaintiff's allegations that Defendants made certain loans despite admonitions from federal regulatory agencies is a sufficient allegation of intent or recklessness to defeat Defendants' Motions to Dismiss.

D. Accounting
In Count III of its Complaint, Plaintiff seeks an accounting of all transfers of interests in property made by the ten Defendants, all assets and properties presently held or previously held by said Defendants, and all liabilities incurred by said Defendants within the period of time commencing five years prior to the date of appointment of conservatorship or receivership. Plaintiff further requests that the Court set aside any transfers made and liabilities incurred with the intent to hinder, delay or defraud Missouri Savings. Plaintiff maintains that the relief sought in Count III is authorized by the Crime Control Act of 1990 (CCA), Pub.L. No. 101-647, 104 Stat. 4789 (1990), 12 U.S.C. § 1821(d)(18)-(19).
The RTC may avoid any transfer of interest or obligation incurred that was made "with the intent to hinder, delay, or defraud the insured depository institution, the Corporation or other conservator, or any other appropriate Federal banking agency." 12 U.S.C. § 1821(d)(17)(A). At the request of the RTC, the Court may enter an order pursuant to Fed.R.Civ.P. 65, "including an order placing the assets of any person designated by the [RTC] under the control of the court and appointing a trustee to hold such assets." 12 U.S.C. § 1821(d)(18). In ruling on any such request, the court shall proceed pursuant to Fed.R.Civ.P. 65, except the applicant need not show that the injury, loss or damage is irreparable and immediate. 12 U.S.C. § 1821(d)(19).
The RTC concedes that there is no express statutory authorization for its request for an accounting. However, Plaintiff contends that § 1821(d)(18) provides for the full panoply of equitable remedies including an accounting. Plaintiff further contends that an accounting is necessary in order that the RTC might determine whether Defendants have dissipated assets or made fraudulent transfers.
Courts have ordered equitable relief pursuant to 12 U.S.C. § 1821(d)(18) where there was a substantial likelihood that the moving party could prove that the defendant had made fraudulent transfers, Federal Deposit Insurance Corp. v. Cafritz, 762 F.Supp. 1503, 1508 (D.D.C.1991), or where the defendant was liable for an admitted debt. Federal Deposit Insurance Corp. v. Owen, No. *1103 5:91CV00389, 1992 U.S. Dist. LEXIS 12145 (D.Conn. April 27, 1992) (adopting recommended ruling of United States Magistrate Judge, No. 5:91CV00389, 1991 WL 173325, 1991 U.S. Dist. LEXIS 20575 (D.Conn. Sept. 3, 1991)).
In the instant case, Plaintiff does not allege that Defendants made fraudulent transfers, that they defaulted on loan obligations to Missouri Savings or that they took excessive salary or bonuses or in any way benefitted economically from their alleged negligence, gross negligence or breach of fiduciary duty. Plaintiff does not cite any authority for the proposition that § 1821(d)(18) authorizes the Court to require an accounting or an impose an asset freeze in the absence of any such allegations. Nor does the Court's independent research uncover any such authority. Accordingly, the Court will dismiss Court III of Plaintiff's Complaint for failure to state a claim.

III. MOTIONS FOR MORE DEFINITE STATEMENT
Defendants Schiller, and LeMaster and Brilliant move the Court to require Plaintiff to make a more definite statement of its allegations. In support of this request, Defendants note that Plaintiff has asserted all of its allegations against all ten Defendants without distinguishing between them. Plaintiff responds that it asserts its claims against all Defendants collectively and that it seeks to hold all Defendants jointly and severally liable for the losses sustained by Missouri Savings.
The Federal Rules of Civil Procedure provide that a party may move for a more definite statement if "a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). The law disfavors Rule 12(e) motions. Thrasher v. Missouri State Highway Comm'n, 534 F.Supp. 103, 106 (E.D.Mo.1981), aff'd, 691 F.2d 504 (8th Cir.1982), cert. denied 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983). Rule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail. FRA S.p.A. v. Surg-O-Flex of America, Inc., 415 F.Supp. 421, 427 (S.D.N.Y.1976).
After careful consideration of Plaintiff's allegations and Defendants' memoranda in support of their motion for more definite statement, the Court finds that Plaintiff's Complaint sets forth the RTC's allegations with sufficient clarity that Defendants reasonably can be expected to frame a responsive pleading. Therefore, the Motions for More Definite Statement will be denied.
For all of the foregoing reasons,
IT IS HEREBY ORDERED that the Motions to Dismiss filed by Defendants Gershman, Balk and Stern (Docket No. 37); Defendant Heitman (Docket No. 43); Defendant Rubin (Docket No. 70); Defendants LeMaster and Brilliant (Docket No. 71); Defendant Schiller (Docket No. 81); and Defendant Borgmann (Docket No. 120) are GRANTED with respect to Plaintiff's claim of gross negligence as set forth in Count II and with respect to Count III and DENIED with respect to Plaintiff's claim of negligence as set forth in Count II and with respect to Count I.
IT IS FURTHER ORDERED that the Motions for More Definite Statement filed by LeMaster and Brilliant (Docket No. 71) and Defendant Schiller (Docket No. 80) are DENIED.
NOTES
[1] Defendant Arline Brilliant is the personal representative of the estate of Alfred Brilliant. Alfred Brilliant was a member of the Board of Directors of Missouri Savings from 1961 until March 1989. The actions of Alfred Brilliant are at issue in this litigation.
[2] Section 1821 of Title 12 addresses the powers and duties of the Federal Deposit Insurance Corporation as conservator and receiver. The RTC possesses the same powers and duties pursuant to 12 U.S.C. § 1441a(b)(4)(A).
[3] In Gaff v. Federal Deposit Insurance Corp., 919 F.2d 384, 390-91 (6th Cir.1990), modified on other grounds, 933 F.2d 400 (6th Cir.1991), the Sixth Circuit cited § 1821(k) for the proposition that "Congress has clearly indicated that the liability of officers and directors of a bank are determined under federal law." However, the construction of § 1821(k) was not at issue in Gaff. Therefore, the Sixth Circuit's discussion of § 1821(k) is rather cursory as compared to the in-depth analyses of the Ninth and Tenth Circuits. The Court finds that the Sixth Circuit's statement regarding § 1821(k) is not persuasive. See also McSweeney, 976 F.2d at 537 n. 4.
[4] The same is true of the Missouri cases defining the circumstances under which a plaintiff is entitled to punitive damages. The Warner court turns to the law of punitive damages for guidance in defining the term "willful and wanton."